**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| DAVID CHARLES GRUSCH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendant. | No. 1:26-cv-607 (LMB/WEF) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## INTRODUCTION

This is a Freedom of Information Act ("FOIA") action involving a request for records held by the Department of Defense ("DoD"). Specifically, this is request for records pertaining to "unauthorized disclosures" involving Plaintiff as well as a request for records hitting on specific search terms involving "UFOs" and like terms that were held by Mark Dupont. All that remains in this case is addressing whether DoD discharged its obligations under the FOIA to conduct a reasonable search for records. The undisputed evidence establishes that DoD met its searching obligations. DoD undertook a search for records in the DoD component that Plaintiff identified in its request. From there, DoD searched its network folders and the classified and unclassified email systems of two custodians. DoD also applies a series of search terms to identify those responsive records. That resulted in finding 22 potentially responsive records, totaling 6,632 pages.

Plaintiff may complain about this search, but DoD followed his instructions. When Plaintiff's request did not specify specific parameters, this record shows that DoD's methods for creating a search were calculated to find responsive records. Indeed, DoD searched the specific component that was requested for unauthorized disclosure records even though the requested component does not handle those records. DoD also searched the custodian Plaintiff requested and included an additional custodian to search as they expected she would have responsive records. DoD applied the search terms that Plaintiff supplied and that led to responsive records.

In short, the record reveals that DoD conducted a legally adequate search in connection with Plaintiff's request. For these reasons and those below, the Court should grant Defendant's motion for summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff Submits a FOIA Request to the Department of Defense

1. On September 30, 2024, Plaintiff submitted a FOIA request to the Department of Defense. Dkt. 2-1.

2. His request sought two categories of records. Dkt. 2-1 at 1.

3. First, Plaintiff requested:

> Any documents, reports, correspondence, records of complaints, or any documents containing information related to, any "unauthorized disclosure complaint" submitted to the office of the Senior Intelligence Oversight Official ("DOD SIOO"), including but not limited to, Mr. Mark Dupont, during the period of April 1, 2023 through December 31, 2023, related to any "unauthorized disclosures" regarding Mr. David Charles Grusch.

Dkt. 2-1; Defendant's Exhibit ("DEX") 1, ¶ 7.

4. Second, Plaintiff requested:

> Any documents, reports, correspondence, records of complaints, or any documents containing information related to, any "unauthorized disclosure complaint" submitted to the office of the Senior Intelligence Oversight Official ("DOD SIOO"), including but not limited to, Mr. Mark Dupont, during the period of April

> 1, 2023, through December 31, 2023, related to any "unauthorized disclosures" that also include the key terms "unidentified aerial phenomenon", "unidentified anomalous phenomenon", and/or the acronyms "UAP" or "UFO".

Dkt. 2-1 at 2; DEX 1, ¶ 7.

5. DoD received Plaintiff's FOIA request on October 1, 2024, and sent Plaintiff an interim response letter indicated that DoD's FOIA Office had begun processing the request on October 3, 2024. DEX 1, ¶ 8.

**B. DoD Conducts a Search for Records and Releases All Non-Exempted Records or Portions Thereof to Plaintiff**

6. On October 3, 2024, DoD's FOIA Office routed Plaintiff's requested to the Office of Oversight and Compliance Directorate. DEX 1, ¶ 9. The FOIA Office selected this component because the "request sought information from the 'office of the Senior Intelligence Oversight Official,'" and that falls under DoD's Oversight and Compliance Directorate. DEX 1, ¶ 9.

7. The assigned office, Intelligence Oversight Division ("IOD") undertook a search of its unclassified and classified network shared folders using the following search terms: "David Charles Grusch", "Grusch", "unidentified aerial phenomenon", "unidentified anomalous phenomenon", "UAP", and "UFO." DEX 1, ¶ 10.

8. IOD searched its shared folders because "they are where IOD would store IOD and SIOO program folders." DEX 1, ¶10. In addition, a "broad search of network shared folders is a common search practice for IOD . . . to ensure a complete search is conducted when there is not a designated folder or known file location for responsive records." DEX 1, ¶ 10.

9. That was the case for one aspect of Plaintiff's request because "unauthorized disclosures are generally information security matters and would not have been handled by IOD as a questionable intelligence activity." DEX 1, ¶ 10. The system also does not tie personal identifiable information to its reports. DEX 1, ¶ 10.

10. As a result of this search, IOD reported on October 7, 2024 "that no information was found related to any unauthorized disclosures regarding Mr. David Charles Grusch." DEX 1, ¶ 10.

11. DoD conducted another search for records in October and November 2024. It searched the email accounts of Joo Chung and Mark Dupont. The classified and unclassified email accounts of these individuals were searched because Ms. Chung was in a position of leadership over IOD and IOD "expected that any communications regarding unauthorized disclosure complaints or key 'UAP' privacy-related matters would have included her," and Mr. Dupont's information was specifically requested in the request. DEX 1, ¶ 11.

12. These accounts were searched using the terms: "David Charles Grusch", "Grusch", "unidentified aerial phenomenon", "unidentified anomalous phenomenon", "UAP", and "UFO." DEX 1, ¶ 12.

13. The search returned 22 potentially responsive records (totaling 6,632 pages). DEX 1, ¶ 12.

14. Those results were returned to the DoD's FOIA Office who began to further process the request and begin coordination with other components and agencies. DEX 1, ¶¶ 14-15.

15. Ultimately, after completing its processing and responsiveness reviews, DoD released 40 pages of responsive records on May 18, 2026. DEX 1, ¶ 16; DEX 2.

## PROCEDURAL HISTORY

Plaintiff initiated this civil action on March 2, 2026. Dkts. 2, 9. Defendant timely answered the Complaint on April 6, 2026 (Dkt. 19), and on the next day, April 7, 2026, the parties jointly move to stay the proceedings for 90 days for DoD to continue processing Plaintiff's FOIA request. Dkt. 21. During the pendency of the stay, the parties provided status reports. Dkts. 23, 24, 25. Near the end of the initial 90-day stay period, the parties sought an additional enlargement of the stay

to enable the parties "to resolve this case without significant judicial intervention." Dkt. 25. The stay was extended. Dkt. 26. As represented in the parties' fourth status report, "Plaintiff maintains an impasse based on search adequacy." Dkt. 27. That is the lone issue in the case to be resolved on summary judgment.

**ARGUMENT**

The undisputed material facts on this record confirm that DoD discharged its obligations under the FOIA when it conducted a search for records in connection with Plaintiffs' request.

A. Under FOIA, an agency must "make reasonable efforts to search for the records" contained in a request. 5 U.S.C. § 552(a)(3)(C). This mandate "does not require a perfect search" for responsive records from the agency, but "only a reasonable one." *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 362 (4th Cir. 2009). When determining the adequacy of a search, "the relevant inquiry is not whether the Agencies' search uncovered every potentially responsive document, but whether the search was 'reasonably calculated to discover responsive documents.'" *Id*. at 364 (quoting *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993)). "A 'reasonably calculated search' does not require that an agency search every file where a document could possibly exist, but rather requires that the search be reasonable in light of the totality of the circumstances." *Id*. (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). And importantly, "the adequacy of a FOIA search is determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Boundy v. U.S. Pat. & Trademark Off.*, 2023 WL 2567350, at *5-6 (E.D. Va. Mar. 17, 2023).

The agency "has the burden of establishing the adequacy of its search and that any identifiable document has . . . been produced." *Heily v U.S. Dep't of Com.*, 69 F. App'x 171, 173

(4th Cir. 2003) (citing *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994)). "This burden may be met through affidavits explaining the manner in which the search was conducted." *Id.* "The court is entitled to accept the credibility of such affidavits, so long as it has no reason to question the good faith of the agency." *Id.* Moreover, a search is reasonably thorough so long as the places that are "likely to contain responsive materials" are searched. *Carter, Fullerton, & Hayes, LLC v. FTC*, 601 F. Supp. 2d 728, 734 (E.D. Va. 2009). This means that a search remains reasonably thorough, even if responsive materials "may have [been] missed." *Iturralde*, 315 F.3d at 315.

B. Applying these principles here, DoD discharged its obligations under the FOIA to conduct reasonable search that was calculated to identify responsive records. Using the information provided in Plaintiff's request, DoD identified the parameters for its two searches. DEX 1, ¶¶ 10-12. DoD first conducted a broad search of its records in the network shared folders to find responsive records to Plaintiff's first request as that is where the specific DoD component stored its records and is the common practice for requests that seek records with no designated folder and no known file location. DEX 1, ¶ 10. Considering these past practices and the reach of Plaintiff's request, initiating a search in the network shared folders was calculated to find records in connection with Plaintiff's first request. *Boundy*, 2023 WL 2567350, at *5 (observing that "an agency is entitled to limit its search based on an appropriate internal analysis of locations where responsive documents are most likely to be located" (quotation omitted)); *Empower Oversight Whistleblowers & Rsch. v. U.S. Dep't of Veterans Affs.*, 2024 WL 3278613, at *9 (E.D. Va. July 1, 2024) (same). Although the searched DoD component was not the normal location for records pertaining to unauthorized disclosures, DoD nevertheless undertook a search of that component as that was requested in Plaintiff's FOIA request. DEX 1, ¶ 9. After applying a series of search terms for that search, no records were returned. DEX 1, ¶ 10. It is also understandable that no records

pertaining to unauthorized disclosures were uncovered because "unauthorized disclosures are generally information security matters and would not have been handled by IOD as a questionable intelligence activity." DEX 1, ¶ 10.

DoD then conducted a second search for records in connection with Plaintiff's second request. It identified two custodians for its search. DEX 1, ¶ 11. One custodian was who Plaintiff requested (Mark Dupont), and DoD also identified Joo Chung as a custodian to search as Ms. Chung oversaw the DoD component subject to the search and it was "expected that any communications regarding unauthorized disclosure complaints or key 'UAP' privacy-related matters would have included her." DEX 1, ¶ 11. DoD applied the key word searches that Plaintiff identified in his request to both custodians' classified and unclassified email accounts and identified 22 records (totaling 6,632 pages) that were potentially responsive to Plaintiff's request. DEX 1, ¶¶ 12-13.

As demonstrated above, DoD's search was reasonable and adequate because it took place within "the offices and individuals deemed most likely to possess responsive information" and was based upon "detailed and expansive instructions for conducting the search," *Rein*, 553 F.3d at 363, including the use of specific search terms reasonably calculated to obtain records responsive to Plaintiff's request. Plaintiff may complain that the agency's search terms were insufficient. But agencies have "discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (cleaned up); *accord Boundy*, 2023 WL 2567350, at *6 . Where, as here, "the search terms are reasonably calculated to lead to responsive documents, the Court should not 'micro manage' the agency's search." *Liberation Newspaper v. U.S. Dep't of*

*State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) (quoting *Johnson v. Exec. Off. for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

In sum, DoD searched in places where responsive records are likely to be kept; reasonably exercised its discretion in selecting appropriate search terms; and used appropriate methods to conduct a reasonably thorough search. Additionally, the Burke Declaration (DEX 1) is sufficiently detailed to explain where DoD "searched, why those areas were searched, and the mechanisms of the search." *Empower Oversight Whistleblower & Rsch. v. Nat'l Insts. of Health*, 122 F.4th 92, 104 (4th Cir. 2024). Because DoD has satisfied its burden to establish the adequacy of its search, the Court should grant summary judgment in Defendant's favor.

**CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court grant its motion and enter judgment in the DoD's favor.

Dated: September 21, 2026

Respectfully submitted,

TODD W. BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

*By*: /s/

MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3741
Fax: (703) 299-3982
Email: matthew.mezger@usdoj.gov

*Counsel for Defendant*