**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| DAVID CHARLES GRUSCH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendant. | No. 1:26-cv-607 (LMB/WEF) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, by and through counsel, and respectfully submits this Memorandum of Law in support of his motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## INTRODUCTION

This action was brought under the Freedom of Information Act (herein "FOIA"), specifically those provisions of 5 U.S.C. § 552 *et seq* pursuant to a FOIA request made to the Department of Defense, Office of the Secretary of Defense and Joint Staff (herein "DoD" and/or "OSD/JS") on September 30, 2024, for specific agency records related to matters concerning the Plaintiff. This civil action was filed following the expiration of the statutorily prescribed 20-day period for production of records responsive to Plaintiff's request. During the pendency of this litigation, the parties consented to several stays of the case while the DoD, through its counsel, worked to provide certain responses to Plaintiff's request. Following some limited production in

response to Plaintiff's original request, and the discussion of the parties, the remaining dispute in this matter, as discussed below, is now ripe for this Court's consideration.

## FACTS AND PROCEDURAL HISTORY

Plaintiff David Charles Grusch is a decorated United States Air Force veteran and former high-ranking U.S. intelligence analyst. Plaintiff's career in service to the United States, and his professional accolades, are fairly summarized in Plaintiff's Complaint. Dkt. 9, ¶¶ 7-9. The circumstances surrounding Plaintiff's formal separation from service to the United States, as further discussed below, became the subject of a "PPD-19 Urgent Concern Complaint to the Inspector General of the Intelligence Community." "PPD-19" refers to Presidential Policy Directive 19, a directive signed by then-President of the United States Barack Obama, addressing matters, among other things, directly related to the retaliation against employees of the Intelligence Community with access to classified information who make protected disclosures concerning waste, fraud, and abuse. *Presidential Policy Directive/PPD-19—Protecting Whistleblowers with Access to Classified Information*, Book II, 2012 Pub. Papers 1244 (Oct. 10, 2012).

In addition to Plaintiff's aforementioned Inspector General whistleblower, Plaintiff also provided sworn testimony to the United States House of Representatives on matters of great public interest that were directly related to his "PPD-19" concerns, on July 26, 2023, before the United States House of Representatives Committee on Oversight and Government Reform. *Unidentified Anomalous Phenomena: Implications on National Security, Public Safety, and Government Transparency: Hearing Before the Subcomm. on Nat'l Sec., the Border, and Foreign Affairs of the H. Comm. on Oversight and Accountability*, 118th Cong. 11-12 (2023), (statement of David Grusch, Former National Reconnaissance Office Representative, Unidentified Anomalous Phenomena Task Force). As part of Plaintiff's sworn testimony just described, he recited specific

allegations of retaliation against him for making both his original PPD-19 complaint and his subsequent protected disclosures to the United States Congress. *Id.*

On September 30, 2024, Plaintiff submitted the FOIA request at issue in this case, through counsel, directly to the DoD and OSD/JS. Dkt. 9-1. As discussed further below, the FOIA request for agency records in this matter was specific, narrowly tailored, and plainly related to the ongoing matters with the ICIG and Congress as described above. Defendant acknowledged Plaintiff's request by formal confirmation dated October 3, 2024. Dkt. 9-2. Plaintiff made two requests as part of his agency submission, the first of which was highly specific, the second of which was slightly broader, but both of which plainly related to the same potential agency records. The first request read as follows:

> Any documents, reports, correspondence, records of complaints, or any documents containing information related to, any 'unauthorized disclosure complaint' submitted to the office of the Senior Intelligence Oversight Official ("DOD SIOO"), including but not limited to, Mr. Mark Dupont, during the period of April 1, 2023 through December 31, 2023, related to any 'unauthorized disclosures' regarding Mr. David Charles Grusch.

The second request read as follows:

> Any documents, reports, correspondence, records of complaints, or any documents containing information related to, any 'unauthorized disclosure complaint' submitted to the office of the Senior Intelligence Oversight Official ("DOD SIOO"), including but not limited to, Mr. Mark Dupont, during the period of April 1, 2023 through December 31, 2023, related to any 'unauthorized disclosures' that also include the key terms 'unidentified aerial phenomenon', 'unidentified anomalous phenomenon', and/or the acronyms 'UAP' or 'UFO.

A plain and ordinary reading of the above requests demonstrates that they move the agency to produce the same material, but that the specific use of Mr. Grusch's name in the search should not otherwise prohibit the agency from disclosing the requested records.

Plaintiff filed this civil action after approximately 504 days went by with no agency production of any records whatsoever. Dkt. 9, ¶¶24-26. During the pendency of this litigation and the stay period entered by the Court, Defendant produced two separate formal responses to Plaintiff's FOIA requests. First, on or about May 18, 2026, DoD provided Plaintiff, through counsel, with 40 pages of responsive documents to his original FOIA request. DEX 1-2. Then, on or about June 26, 2026, following an additional meet and confer among counsel for the parties, DoD again produced the same 40 pages, but with additional redactions. Following a review of the asserted redactions, the documents themselves, and the contents of the unredacted portions of the agency records, counsel for the parties agreed that the sole remaining issue was Plaintiff's challenge to the adequacy of the search.

1. Summary of the Defendant's Production.

Defendant's FOIA production in this case can be easily summarized as a series of emails and draft documents generated by the office of Mark Dupont, then Senior Intelligence Oversight Official in the Office of the Assistant to the Secretary of Defense for Privacy, Civil Liberties, and Transparency (herein "SIO Dupont"). For purposes of this memorandum and motion, Plaintiff will refer exclusively to the second FOIA production of June 26, 2026 as described above and enclosed in part here as Plaintiff's Exhibit 1 to this memorandum. PEX 1.[1]

The agency documents reveal that on October 17, 2023, a legislative assistant in the office of Congressman Tim Burchett (TN-02) made a written inquiry to the Office of the Secretary of Defense concerning the substance of Plaintiff's Congressional testimony of July 26, 2023 as described above. PEX 1, Bates 003-004. The substance of the Congressional Inquiry to OSD was

[1] While 40 pages of documents were produced in the June 26, 2026 response described here, Plaintiff only includes the relevant portions of that production as an exhibit for purposes of his motion and memorandum.

similar, though not identical, to the FOIA request at bar. The inquiry identified Plaintiff as a claimant in an ongoing whistleblower retaliation matter, and asked for any information concerning complaints in which Plaintiff was the subject, and records related to those complaints. *Id.* What followed the October 17, 2023 inquiry by the Congressman's office was a series of internal emails and draft documents, all generally related to the inquiry and to how the agency would respond to Congress. Ultimately, on or about November 1, 2023, SIO Dupont responded to the Congressman's October 17 inquiry by letter. PEX 1, Bates 040. It is the admissions and representations made in this letter that form the basis of Plaintiff's assertions that the agency FOIA search and production in this case was inadequate, as the contents of the letter reveal on its face an acknowledgment that additional responsive materials likely exist.

## **ARGUMENT**

The Freedom of Information Act compels agencies of the United States to make available requests for reasonably described records in that agency's possession to any person. 5 U.S.C. § 552(a)(3)(A). As part of an agency's response to such requests, the agency "*shall* make reasonable efforts to search for the records[.]" 5 U.S.C. § 552(a)(3)(C) (emphasis added). The statute defines the term "search" as "review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). The Act provides the appropriate United States District Court *de novo* review of final agency determinations concerning the production of agency records, withholdings, or exemptions. The burden is on the agency to sustain its actions. 5 U.S.C. § 552(a)(4)(B).

When interpreting the Act's mandate regarding the reasonable efforts made by the agency in its search, courts have carved out numerous requirements the agency must show prior to awarding summary judgment on the adequacy of the agency's search. For example, the agency

"cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Further, courts recognize that the adequacy and reasonableness of the agency search is "dependent on the circumstances of the case." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), *citing Founding Church of Scientology of Washington, D. C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 834 (D.C. Cir. 1979). When the unique circumstances in a FOIA case provide that "further search procedures were available and within the agency's ability to utilize without expending a whit more than reasonable effort," the court may find the search inadequate and order further relief. *Founding Church of Scientology*, 610 F.2d at 834-835.

Agencies can and often do, as here, submit affidavits in support of the adequacy of the search, and such affidavits are contemplated by the Act. 5 U.S.C. § 552(a)(4)(B). However, when the affidavit "lacks the detail necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate[.]" *Morley v. C.I.A.*, 508 F.3d 1108, 1122 (D.C. Cir. 2007).

1. <u>The documents produced by Defendant demonstrate the search was inadequate because they identify and reference additional responsive records</u>.

The Plaintiff calls the court's attention to the previously referenced DoD production dated June 26, 2026, specifically the final page of the production. PEX 1, Bates 040. As previously identified, this document constitutes the formal response from SIO Dupont's office to the Congressional inquiry of October 17, 2023. In the letter, SIO Dupont makes various representations concerning his office's lack of possession of the filing of any formal complaint against Plaintiff. However, the letter affirmatively states the following:

> [I]n in the summer of 2023, an Intelligence Oversight (IO) Officer in the Intelligence Oversight Directorate (IOD), Office of the Assistant to the Secretary of Defense for Privacy, Civil Liberties,

> and Transparency (OATSD(PCLT)) received a telephone call from an IO Officer in the U.S. Air Force. During the brief telephone conversation, the Air Force IO Officer informed IOD that the Air Force had received preliminary information that raised concerns about a possible unauthorized disclosure of classified information.
>
> . . . The IO Officer subsequently contacted IOD and informed IOD that the information in question had been properly coordinated so there was no unauthorized disclosure, and no follow-on action was necessary.

First, unlike the Congressional inquiry that requested SIO Dupont's office confirm the "existence and disposition" of any such inquiry, Plaintiff's FOIA request instead asked for "any document containing information related to" such inquiry. The fact that the inquiries, which were in fact made as evidenced by SIO Dupont's letter, did not result in further investigation, is not the subject of Plaintiff's request. Instead, the agency should have produced all documents relating to the inquiry itself, as shown by the text of the letter.

SIO Dupont's office confirmed that it received a report about a potential inquiry into Plaintiff as outlined above. Indeed, the letter goes on to cite specific details about the initial report from the U.S. Air Force regarding Plaintiff, specifically what the potential inquiry was about, and further confirms that a follow-on discussion occurred concerning the initial inquiry. By the plain description of these events from SIO Dupont himself, it is clear that SIO Dupont's office kept records of the initial inquiry by the Air Force IO Officer, as well as additional records confirming the subsequent decision that no further follow-on investigations were necessary. Plaintiff's FOIA request unambiguously requested any such records. Even if the initial search for such records by the agency did not yield the results described above, it would have been "a whit more than reasonable effort" to have discovered that the event did occur and records were clearly kept of it. *Founding Church of Scientology*, 610 F.2d at 834-835.

2. Defendant's Proffered Declaration makes no reference to the specific inquiry nor details any search targeting the event described in the request.

Defendants offer the Declaration of Ms. Virginia Burke in support of their position on search adequacy. DEX 1. A review of the affirmations made in the declaration show that it merely recites 3 search locations and makes no mention whatsoever of the discovery of the November 1, 2023 letter from SIO Dupont to Congress that confirms the referral from the U.S. Air Force did in fact occur, and at least two encounters between SIO Dupont's office and the U.S. Air Force. First, in paragraph 10, the declaration states that IOD searched "all of its unclassified and classified network shared folders" and yet goes on to state that these folders would not "tie personal identifiable information (e.g., names, email addresses, Social Security Numbers, dates of birth, or other identification numbers) to reports." DEX 1, ¶ 10. It is unclear at best from this description how a search for Plaintiff on this system could be undertaken if the system has no names to search for.

The declaration goes on to state that the search concluded with a review of the email accounts of OATSD(PCLT) Joo Chung and Mark Dupont, presumably (although the declaration does not confirm this) because both individuals held the same office at overlapping times. DEX 1, ¶ 11. This concludes the declaration's description of the search: one system with "no personally identifiable information" and two email accounts. The declaration concludes with a vague reference to "intra- and inter- Agency coordination" that was necessary for a period of approximately 15 months for a mere 22 responsive documents. DEX 1, ¶¶ 14-16. As argued below, the declaration confirms the agency did not "follow the trail."

3. Defendant did not follow obvious leads and stopped short of an adequate search based on documents that emerged from its own inquiry.

The Freedom of Information Act does not impose upon the requesting party the burden of knowing the precise location, let alone the precise file system, in which the records are located; it only requires that the request be "reasonably described." 5 U.S.C. § 552 a(3)(A). The agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68. Indeed, in the affidavits or declarations submitted by an agency in support of an adequate search, the agency is "required to explain in its affidavit that no other record system was likely to produce responsive documents." *Id.*

With respect to the initial search and production of records in this case, our courts have held that the agency is under a continuing duty to adjust what constitutes a reasonable search as leads emerge. *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). This is generally referred to as the "follow the trail" doctrine in FOIA cases and provides that an agency's search may be shown to be inadequate based on further leads found in the agency records produced. *See, e.g.*, *Truitt v. Dep't of State*, 897 F.2d 540, 546 (D.C. Cir. 1990) (holding State Dept. FOIA search inadequate because it did not conduct reasonable follow-up search in other file systems).

When the agency in this case conducted its search and discovered confirmation that SIO Dupont's office did indeed receive multiple references and/or communications from the U.S. Air Force naming the Plaintiff as a potential target of an unauthorized disclosure incident, it had a duty to "follow the trail" to look for responsive documents related to those encounters, even if located in different file systems. *Id.* Obviously, Plaintiff could not know or even appreciate SIO Dupont's internal office policies and procedures when his name was brought to the office's attention. For example, he could not know whether, when receiving new referrals from other agencies, internal policy requires that the analyst taking the call create a system or software profile, electronic note,

or other similar record for pending investigations or inquiries, even if they are not ultimately conducted.

It is reasonable to conclude from SIO Dupont's November 1st letter that someone in his office retained specific information about the Plaintiff and the potential investigation into Plaintiff. How else would he later be able to describe the referral incident to Congress with such specificity? Regrettably, the agency's declaration is silent on this. For example, Ms. Burke could have provided in her affidavit that, when producing its initial search results, the agency discovered that the underlying incident giving rise to this FOIA request did occur, and it therefore searched specific files or systems that would have retained information and records unique to that agency's record retention practices at the time. But the affidavit makes no reference to the "lead" produced here, and the Plaintiff is therefore left with no indication that the agency has adequately searched for records of an event that did in fact occur.

## CONCLUSION

Because the agency search was inadequate and failed to follow reasonable leads, and because the declaration in support of the search is devoid of any indication to the contrary, Plaintiff respectfully moves the court to deny the Defendant's motion for summary judgment and grant Plaintiff's motion for summary judgment. Plaintiff respectfully requests that the Court enter an order acknowledging the insufficiency of the search for the reasons herein, order a search consistent with those reasons, and further order that the agency provide a supplemental affidavit or declaration addressing the specific concerns raised herein.

This the 12th day of October, 2026.

/s/ Anthony I. Shin__
Anthony I. Shin, VASB# 85335
Basil M. Al-Qaneh, VASB # 99933
SHIN LAW OFFICE, PLC
118 Edwards Fairy Rd., N.E., Suite 110
Leesburg, Virginia 20176
Telephone: (571) 445-6565
Facsimile: (703) 442-8938
Email: shin@shinlawoffice.com
basil@shinlawoffice.com

/s/ Huntington M. Willis
Huntington M. Willis, NCSB # 46506
Martin & Jones, PLLC
4140 Parklake Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 821-0005
Facsimile: (919) 863-6086
Email: hmw@m-j.com
***Admitted pro hac vice***

**ATTORNEYS FOR PLAINTIFF**